RECEIVED
IN ALEXANDRIA, LA.
SEP 0 8 2009
TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| FRANCISCO LIRA | CIVIL ACTION NO. 08-487 |
| VERSUS | JUDGE TRIMBLE |
| PNK (LAKE CHARLES), LLC, d/b/a L'AUBERGE DU LAC HOTEL AND CASINO, ET AL | MAGISTRATE JUDGE KAY |

### MEMORANDUM RULING

Before the court is a motion for summary judgment filed by defendants PNK (Lake Charles), LLC, d/b/a L'Auberge du Lac Hotel and Casino ("PNK") and its insurer Zurich American Insurance Company ("Zurich").[1] For the reasons expressed in the following memorandum ruling, this court finds that defendants' motion should be GRANTED and, accordingly, all claims by plaintiff against defendants should be DISMISSED with prejudice.

I.  INTRODUCTION

*Relevant Facts*

Plaintiff, Francisco Lira, is a resident of Texas. On or about April 1, 2007, plaintiff was a guest at the L'Auberge du Lac Hotel and Casino and fell while walking through the main lobby to the men's restroom. Plaintiff sustained multiple injuries, including a broken pelvis and left arm. Plaintiff filed suit against the owner of the casino, defendant PNK and its insurer, Zurich in the Fourteenth Judicial District Court for the Parish of Calcasieu, State of Louisiana alleging defendants' liability for his injuries under La. Civ. C. Art. 2317. Specifically, plaintiff's suit

---
[1] R. 13.

1

alleges that a portion of flooring in the main lobby is defective in its design and construction and presents an unreasonable risk of harm, of which defendant PNK was aware.

Defendants, domiciled in Louisiana and New York, timely removed this suit to federal court, pleading diversity of citizenship as a jurisdictional basis.[2]

Defendants filed the instant motion for summary judgment which alleges that no genuine issue of material fact exists concerning whether or not PNK's premises contained a hazardous condition pursuant to LSA-RS 9:2800.6, which it argues is applicable to this case.

***Applicable Standard***

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[3] A dispute is "genuine" if "the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict" in favor of the nonmoving party.[4] A disputed fact is "material" when its outcome would affect the outcome of the claims at issue under applicable law.[5]

If the dispositive issue is one as to which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the record before the court contains insufficient proof concerning any essential element of the nonmoving party's claim.[6] Once the nonmoving party has demonstrated a lack of proof by the nonmoving party, the burden shifts to the nonmoving party to set out specific facts which show the existence

---

[2] 28 U.S.C. §§ 1332, 1441.
[3] Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).
[4] Lavespere v. Niagra Mach. & Tool Works, Inc., 910 F.2d 167, 178 (5th Cir. 1990) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).
[5] Anderson, 477 U.S. at 248 (citing 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2725, pp. 93-95 (1983).
[6] Celotex, supra, 477 U.S. at 325; Id.

2

of a genuine issue of material fact.[7] The nonmoving party may not rest upon the pleadings and must respond by identifying specific facts which establish the existence of a genuine issue of material fact.[8] Unsupported, vague or conclusory allegations will not suffice to fulfill this burden.[9]

In determining whether or not a genuine issue of material fact exists as to any element of claims at issue, the court will view the evidence in the light most favorable to the nonmoving party, but will not engage in credibility determinations.[10] If the movant fails to meet its initial burden, summary judgment must be denied.[11]

## II. ANALYSIS

Defendants' motion asserts that we must evaluate plaintiff's claims under LSA-RS 9:2800.6, commonly referred to as the "merchant's liability" statute. The statute imposes a duty on merchants to exercise reasonable care in keeping floors, aisles and passageways in "reasonably safe condition." That duty encompasses a "reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage." R.S. 9:2800.6 also instructs that a claimant under the statute bears the burden of proving, in addition to all other elements of his cause of action, that

> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
> (3) The merchant failed to exercise reasonable care.

---

[7] Id.
[8] Fed. R. Civ. P. 56; Doe v. Dallas Indep. Sch. Dist., 220 F.3d 380, 383 (5th Cir. 2000), cert. denied, 531 U.S. 1073 (2001); Austin v. Will-Burt Co., 361 F.3d 862 (5th Cir. 2004).
[9] Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).
[10] Anderson, 477 U.S. at 255.
[11] Id.

3

> In determining reasonable care, the absence of a
> written or verbal uniform cleanup or safety
> procedure is insufficient, alone, to prove failure
> to exercise reasonable care.[12]

Defendants cites several state and federal cases[13] in which this statute was applied and assert that, under the facts of this case, plaintiff cannot fulfill his evidentiary burden and, accordingly, summary judgment is now appropriate.

Plaintiff argues that this case is distinguishable from cases cited by defendants because plaintiff's claims assert a defect in the premises, not the presence of a hazardous condition, such as a foreign substance. Plaintiff asserts that his claim should be analyzed under La. Civ. Code Art. 2317, which provides, in part

> [w]e are responsible, not only for the damage occasioned
> by our own act, but for that which is caused by
> the act of persons for whom we are answerable, or of the
> things which we have in our custody

and Art. 2317.1, which provides, in part

> [t]he owner or custodian of a thing is answerable for
> damage occasioned by its ruin, vice, or defect, only upon
> a showing that he knew or, in the exercise of reasonable
> care, should have known of the ruin, vice, or defect
> which caused the damage, that the damage could have
> been prevented by the exercise of reasonable care, and
> that he failed to exercise such reasonable care.

Plaintiff cites the Louisiana Second Circuit Court of Appeal's opinion in Johnson v. Brookshire Grocery Co.[14] in support of this argument. In Johnson, the court considered whether or not claims against defendant grocer should be analyzed under Article 2317 or R.S. 9:2800.6.

---

[12] LSA-R.S. 9:2800.6(B)(1)-(3).
[13] Neal v. Players Lake Charles, LLC, 787 So.2d 1213 (La. App. 3 Cir. 2001); Rowell v. Hollywood Casino Shreveport, 996 So.2d 476 (La. App. 2 Cir. 2008); Harrison v. Horseshoe Entertainment, 823 So.2d 1124 (La. App. 2 Cir. 2002); Moore v. Pelican Gaming, Inc., 2001 WL 1104674 (E.D. La. 9/12/2001); Washington v. St. Charles Gaming, 2008 WL 394214 (W.D. La. 2/12/08).
[14] 754 So.2d 346 (La. App. 2 Cir. 2000), erroneously cited at p. 10 of plaintiff's brief as 754 So.2d 84.

Johnson sustained injuries during a fall in a supermarket crosswalk and claimed that the pothole in the asphalt which caused the fall was an unreasonably dangerous hazard, of which Brookshire was aware. The court found that La. Civ. C. Art. 2317 was applicable because Johnson alleged a defect in a thing belonging to defendant grocer and, as such, the claim should be analyzed under the strict liability theory because there was no possibility that the hazard was caused by a third party, as is true in slip and fall cases where R.S. 9:2800.6 is applicable.[15]

In Birdsong v. Hirsch Memorial Coliseum,[16] the Louisiana Second Circuit again addressed the distinction between cases alleging a defect and cases alleging a hazardous condition. Birdsong slipped and fell while attending a "Disney on Ice" production. Examining the summary judgment evidence submitted to the trial court, the appellate court determined that there were two potential causes of the condensation on the concrete, upon which Birdsong slipped: a construction defect relating to the ice rink and a liquid spill unrelated to the ice rink. The court discussed the difference in liability theory applicable to each of these causes, noting that a construction defect is a hazard "in the premises," while a liquid spill is a hazard "on the premises."[17] The court reasoned that allegations of hazardous conditions "on the premises" would be governed by R.S. 9:2800.6, while allegations of hazardous conditions "in the premises" would be governed by La. Civ. C. Arts. 2317 and 2317.1.

We do not dispute that the merchant liability statute is, in appropriate cases, applicable to casinos, but, rather, find that plaintiff's allegations in this case are in the nature of a defect in a thing belonging to defendant and, thus, are governed by La. Civ. C. Arts. 2317 and 2317.1. The cases cited by defendants are distinguishable from the facts at issue here, involving the presence of foreign objects or substances, rather than a defect in construction. Having determined the

---

[15] Id. at 349-50.
[16] 889 So.2d 1232 (La. App. 2 Cir. 2004).
[17] Id. at 1235.

applicable liability framework in this case, we now address its elements as they relate to facts before us.

Plaintiff must demonstrate, by a preponderance of the evidence, that the property in custody of defendant contained a defect.[18] A condition is a "defect" within the meaning of La. Civ. C. Art. 2317.1 if it creates an "unreasonable risk of harm" to persons exercising ordinary care and prudence.[19] Whether or not a condition presents an unreasonable risk of harm is determined by the facts of each case.[20] The fact-finder must weigh the potential hazard of the defect against the social utility and cost and feasibility of repair.[21] Plaintiff must next demonstrate, by a preponderance of the evidence, that defendant knew or should have known of the unreasonable risk of harm and failed to act to prevent it.

Defendant asserts that the expert reports, affidavits, depositions and other evidence in the record reveal that plaintiff is unable to demonstrate the necessary elements of his claim in this case. Specifically, defendant points out that plaintiff's claim relies heavily on the opinion of plaintiff's safety expert, Dr. Gary Nelson, that there is a height differential between the carpeted surface and the glazed concrete surface which constitutes an unreasonable risk of harm, per se, because it violates certain applicable building codes. Defendant argues that this report,[22] issued on June 17, 2009, is insufficient as to plaintiff's burden of proof because it was based on "photo analysis,"[23] because Dr. Nelson had not physically inspected the accident site prior to rendering his report. Defendant further argues that Dr. Nelson's subsequent affidavit, attached as Exhibit 6

---

[18] La. Civ. C. Art. 2317.1.
[19] Moore v. Oak Meadows Apartments, 997 So.2d 594, 598 (La. App. 2 Cir. 2008) (citing Johnson v. City of Monroe, 870 So.2d 1105 (La. App. 2 Cir. 2004)); Boddie v. State, 661 La. App. 2 Cir. 1995).
[20] Id.
[21] Reed v. Wal-Mart Stores, Inc., 708 So.2d 362 (La. 1998).
[22] Exhibit 6A to plaintiff's memorandum in opposition to motion (R.
[23]

to plaintiff's memorandum in opposition, is actually a supplemental expert report rendered after the applicable deadlines for production of such reports lapsed.

The court has examined Dr. Nelson's original expert report and the purported affidavit, dated August 5, 2009, and finds that it is, in fact, a supplemental expert report which seeks to add to the opinions of that expert. Plaintiff filed this case in April of 2008, at which time this court's standing order instructed that plaintiff "...shall furnish the names and written reports of the experts that he intends to call at trial to opposing counsel no later than ninety (90) days before the trial..."[24] Given the October 5, 2009 trial date assigned to this matter, plaintiff was required to file all expert reports no later than Tuesday, July 7, 2009. As argued by defendants, we find that Dr. Nelson's purported affidavit is actually a supplemental report, filed after the applicable deadline. However, the court finds that defendants' own expert report, furnished by architect Don O'Rourke on July 31, 2009, is also untimely. Given the regrettable failure of all three parties to adhere to the applicable expert report deadline in this case, the court declines to strike or disregard Dr. Nelson's supplemental report on that basis.

Dr. Nelson's report, attached as Exhibit 6A to plaintiff's memorandum in opposition, opines that the "transition between the glazed cement flooring and wood flooring in this matter appears from photo analysis to be ¼ inch nominal."[25] His supplemental report adds that he personally observed the accident site on July 28, 2009.[26] Dr. Nelson cites Section 7.1.6.2 of NFPA 101, Sections 303.2 and 303.3 of Standard A117.1 by the American National Standards Institute ("ANSI") and 28 CFR Part 36, Appendix A at Section 4.5.2 as examples of applicable

---

[24] A copy of this court's standing order is furnished to all parties at the time their case is assigned a trial fixing conference. The record in this case shows that the parties participated in a trial fixing conference on September 24, 2008 before Magistrate Judge Kay. A second trial fixing conference was held on September 29, 2008, at which time the trial of this matter was assigned its current trial date, October 5, 2009.
[25] Plaintiff's Exhibit 6A at p. 12.
[26] Plaintiff's Exhibit 6 at p. 3.

7

building codes and standards which require that a change in level of flooring measuring greater than ¼ inch to be beveled with a slope no greater than 1:2.[27] The report also points out that the City of Lake Charles adopted the IBC and the NFPA 101, which both incorporate the ANSI requirement, making the beveled edge requirement applicable to the L'Auberge du Lac Casino in this case. Dr. Nelson arrives at the conclusion that, given his photo analysis of the area in question, defendant PNK failed to adhere to this standard, which makes the flooring transition between glazed cement and carpet an unreasonable risk of harm to patrons.

The report of Mr. O'Rourke, defendants' expert, states that he personally inspected the accident site and, depressing the carpet in the manner that a patron walking in the area would, found the height differential between the carpeted area and glazed cement area to be approximately 1/8 inch.[28] Citing the same applicable codes as cited by Dr. Nelson, Mr. O'Rourke concludes that the flooring transition in question complies with the requirements of such codes because it is less than ¼ inch in height and, therefore, requires no beveling along its concrete edge.[29]

Reviewing the competing reports before us, we find that plaintiff has failed to demonstrate that the area in question contains a defect under La. Civ. C. Art. 2317.1. Dr. Nelson's reports fail to provide a factual basis for his conclusions of law that defendants did not adhere to applicable codes and, thus, created and knew or should have known of the existence of an unreasonable risk of harm. Although he purports to have inspected the accident site personally, his observation as to the height differential between the carpet and glazed cement surfaces remains that it "appears from photo analysis to be ¼ inch nominal."[30] Moreover, Dr.

---

[27] Id.
[28] Plaintiff's Exhibit 2.
[29] Id.
[30] Plaintiff's Exhibit 6 at p. 12.

8

Nelson does not disclose what he means by "photo analysis," leaving the court to guess at how he might have arrived at his conclusion, which, we reiterate, was unchanged by his visit to the site. Finally, Dr. Nelson's report contains many conclusions of law,[31] which infringe upon the proper role of the fact-finder, the jury. The court finds that a jury could not reasonably find in favor of plaintiff based upon Dr. Nelson's reports.

As we have often noted in ruling on summary judgment motions, it is the duty of the non-moving party to respond to a motion for summary judgment with specific facts which demonstrate the existence of a genuine issue of material fact. Speculation, hypothetical assertions and unsupported conclusions are insufficient to meet this burden.[32] While we view the evidence before us in the light most favorable to the non-moving party, we do not ignore gaping holes in the evidence which plaintiff has neglected to correct, even after being served with a motion for summary judgment. The court does not suggest that a plaintiff's only means to demonstrate the existence of a defect is by procurement of expert testimony,[33] but, in this case, plaintiff offers no other evidence in support of his claim, except his own testimony as to the events at issue. Plaintiff's own assertions do not constitute a preponderance of the evidence, as required for a jury to reasonably find that the flooring at issue contained a defect.

Plaintiff must demonstrate by a preponderance of the evidence that the flooring in question contained a defect under La. Civ. C. Art. 2317.1. Taking Dr. Nelson's assertions that the height differential is indeed ¼ inch, we cannot find that it constitutes a defect. As cited above, the NFPA 101, ANSI A117.1 and ADA require that changes in elevation greater than ¼ inch be beveled and, again, plaintiff's expert opines that the differential is approximately ¼ inch

---

[31] Plaintiff's Exhibit 6 at pp. 16-18.
[32] SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993).
[33] Madden v. Saik, 511 So.2d 855, 858 (La. App. 4 Cir. 1987), cert. denied 514 So.2d 131 (La. 1987).

in height. Assuming a ¼ inch change in elevation, the flooring at issue complies with all applicable codes and standards.

Examining the alleged defect within the context of the duty/risk analysis applicable to tort claims in Louisiana,[34] we similarly find that plaintiff fails to demonstrate that the height differential at issue presents an unreasonable risk of harm. Plaintiff asserting the tort claim, as here, must prove these five elements by a preponderance of the evidence: (1) the defendant's substandard conduct was the cause-in-fact of the plaintiff's injuries; (2) the defendant owed a duty to plaintiff; (3) the defendant breached that duty; (4) the defendant's substandard conduct was the legal cause of plaintiff's injuries; and (5) that plaintiff sustained damages as a result of the causative act or omission.[35] Whether or not a duty exists in a particular case is a question of law, not of fact and is, thus, within the province of the court.[36]

La. Civ. C. Arts. 2317 and 2322 both instruct that defendant PNK had a duty to exercise reasonable care to prevent or correct a defect in the construction of its casino if it knew of or should have known of the existence of such defect. Plaintiff simply has not demonstrated that defendant PNK breached its duty with respect to the flooring at issue. Plaintiff's deposition testimony asserts that casinos are frequented by the elderly and, as such, the flooring should be level. The court passes no judgment on plaintiff's opinion as to the average age of the casino's guests, but we reiterate that, taking plaintiff's own expert testimony as true, a reasonable jury could not find that the floor at issue violates the applicable codes and standards for changes in elevation. Accordingly, we find a duty to provide a safe walking surface per the adoption of the IBC and NFPA 101 by state and local authorities, but no evidence of a breach of that duty.

---

[34] State Farm Mut. Auto. Ins. Co. v. LeRouge, 995 So.2d 1262, 1276 (La. App. 4 Cir. 2008).
[35] Perkins v. Entergy Corp., 782 So.2d 606, 611 (La. 2001).
[36] Mathieu v. Imperial Toy Corp., 646 So.2d 318, 321-22 (La. 1994).

10

Photos of the area submitted by defendants[37] show the area to be in good repair and plaintiff does not assert otherwise. Further, it is a matter of common sense that small changes in elevation are found in a variety of walking surfaces including sidewalks, tile, asphalt, wood and brick. Given this basic truth, we find that plaintiff has failed to demonstrate that the change in elevation at issue in this case reaches beyond that which is found in everyday living and qualifies as a defect under Art. 2317.1. Accordingly, we find that the risk of harm presented by this change in elevation was minute and that defendants did not breach such duty in their construction of the premises.

Given our reasoning above, the court finds that defendant is entitled to summary judgment dismissing plaintiff's claims against them with prejudice. The court will issue a judgment in conformity with these findings.

**Alexandria, Louisiana**

**September 8, 2009**

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

---

[37] Defendants' Exhibits 6-8.